UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

Case No.:1:21-cv-00021

AMERICAN            CONTRACTORS
INDEMNITY COMPANY, a California
Corporation; UNITED STATES SURETY
COMPANY, a Maryland Corporation; and
U.S.    SPECIALTY    INSURANCE
COMPANY, a Texas Corporation,

        Plaintiffs,

v.

ALLAN SPEAR CONSTRUCTION, LLC,
a Florida limited liability company; A&G
EQUIPMENT RENTALS, LLC, a Florida
limited liability company; CHEAR, LLC, a
Florida limited liability company; KUSKY
& SPEAR, LLC, a Florida limited liability
company; SPEAR HAUGE, LLC, a Florida
limited    liability    company;    SPEAR
NORTHWOOD, LLC, a Florida limited
liability company; SPEAR HOLDINGS,
LLC, a Florida limited liability company;
TRISAL, LLC, a Florida limited liability
company; ALLAN W. SPEAR, III, an
individual; and VIVIAN C. SPEAR, an
individual,

        Defendants.
_____/

**COMPLAINT**

Plaintiffs, AMERICAN CONTRACTORS INDEMNITY COMPANY, UNITED STATES SURETY COMPANY, and U.S. SPECIALTY INSURANCE COMPANY, through counsel, hereby sue Defendants, ALLAN SPEAR CONSTRUCTION, LLC, A&G EQUIPMENT RENTALS, LLC, CHEAR, LLC, KUSKY & SPEAR, LLC, SPEAR HAUGE, LLC, SPEAR NORTHWOOD, LLC, SPEAR HOLDINGS, LLC, TRISAL, LLC, ALLAN W. SPEAR, III, and VIVIAN C. SPEAR, and allege:

## PARTIES, JURISDICTION, AND VENUE

1. This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because Plaintiffs and Defendants are citizens of diverse states.

2. AMERICAN CONTRACTORS INDEMNITY COMPANY ("ACIC") is a California corporation incorporated in California with its principal place of business in Los Angeles, California making it a citizen of California in accordance with 28 U.S.C. § 1332(c)(1). ACIC is licensed to conduct business in Florida.

3. UNITED STATES SURETY COMPANY ("USSC") is a Maryland corporation incorporated in Maryland with its principal place of business in Timonium, Maryland making it a citizen of Maryland in accordance with 28 U.S.C. § 1332(c)(1). USSC is licensed to conduct business in Florida.

4. U.S. SPECIALTY INSURANCE COMPANY ("USSIC") is a Texas corporation incorporated in Texas with its principal place of business in Houston,

2

Texas making it a citizen of Texas in accordance with 28 U.S.C. § 1332(c)(1). USSIC is licensed to conduct business in Florida.

5.      Upon information and belief, ALLAN SPEAR CONSTRUCTION, LLC ("ASC") is a Florida limited liability company with is principal place of business in Gainesville, Alachua County, Florida and its members, Allan W. Spear III and Vivian C. Spear, domiciled in Gainesville, Alachua County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

6.      Upon information and belief, A&G EQUIPMENT RENTALS, LLC is a Florida limited liability company with is principal place of business in Gainesville, Alachua County, Florida and its member, Allan W. Spear III, domiciled in Gainesville, Alachua County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

7.      Upon information and belief, CHEAR, LLC is a Florida limited liability company with is principal place of business in Gainesville, Alachua County, Florida and its member, Vivian C. Spear, domiciled in Gainesville, Alachua County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

8.      Upon information and belief, KUSKY & SPEAR, LLC is a Florida limited liability company with is principal place of business in Gainesville, Alachua County, Florida and its members, Allan W. Spear III and Vivian C. Spear,

domiciled in Gainesville, Alachua County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

9.     Upon information and belief, SPEAR HAUGE, LLC is a Florida limited liability company with is principal place of business in Gainesville, Alachua County, Florida and its members, Allan W. Spear III and Vivian C. Spear, domiciled in Gainesville, Alachua County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

10.     Upon information and belief, SPEAR NORTHWOOD, LLC is a Florida limited liability company with is principal place of business in Gainesville, Alachua County, Florida and its members, Allan W. Spear III and Vivian C. Spear, domiciled in Gainesville, Alachua County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

11.     Upon information and belief, SPEAR HOLDINGS, LLC is a Florida limited liability company with is principal place of business in Gainesville, Alachua County, Florida and its member, Vivian C. Spear, domiciled in Gainesville, Alachua County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

12.     Upon information and belief, TRISAL, LLC is a Florida limited liability company with is principal place of business in Gainesville, Alachua County, Florida and its member, Vivian C. Spear, domiciled in Gainesville,

Alachua County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

13.     Upon information and belief, Defendant ALLAN W. SPEAR, III ("Mr. Spear") is a resident of, and domiciled in, Gainesville, Alachua County, Florida, making him a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

14.     Upon information and belief, Defendant VIVIAN C. SPEAR ("Mrs. Spear") is a resident of, and domiciled in, Gainesville, Alachua County, Florida, making her a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

15.     The causes of action alleged herein fall within the jurisdictional limits of the Court because Plaintiffs seek to recover more than $75,000.00 from the Defendants.

16.     Venue is appropriate in this Court because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Northern District of Florida, and because one or more Defendants, or its members, are domiciled within Alachua County, Florida, which is within the province of the Gainesville Division of this Court.

## GENERAL ALLEGATIONS

### The Bonds and Indemnity Agreement

17.     As part of its business, Plaintiffs issue payment and performance bonds and stand as surety for selected contractors.

5

18.     In connection with its work, ASC from time to time required surety payment and performance bonds.

19.     To induce Plaintiffs to issue payment and performance bonds on its behalf, ASC and the other Defendants entered into an indemnity agreement with Plaintiffs.

20.     Specifically, on May 26, 2017, ASC and the other Defendants (collectively, the "Indemnitors") each executed a General Indemnity Agreement ("Agreement") in favor of Plaintiffs, its affiliates, and its agents.   A true and correct copy of the Agreement is attached hereto and incorporated herein as **Exhibit "A."**

21.     The execution of the Agreement, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to Plaintiffs issuing any bonds naming ASC as a principal.

22.     According to the Agreement, the Indemnitors agreed, in part, to:

> …   jointly   and   severally,   exonerate,   indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which

arise by reason of or in any manner in consequence of anyone or more of the following: (i) the execution or procurement by the Surety of any Bond; (ii) the failure of any Principal or Indemnitor to perform or comply with any provision of this Agreement; (iii) the enforcement of any provision of this Agreement; (iv) the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; (v) any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; (vi) any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or advance of any monies to any Principal or Indemnitor; or (ix) the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise. The obligations provided for in this paragraph are without regard to whether the Surety, in its sole and absolute discretion, elects to employ its own counselor, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection.

The Principals and Indemnitors further agree that they shall be liable for, and that the Surety shall be entitled to charge and recover for, any and all payments made by the Surety in the good faith belief that: (I) any Principal or Indemnitor is or has been in default under this Agreement; (2) the Surety was or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of the Surety's rights or interests or to avoid or lessen the Surety's actual or alleged liability. The Surety shall be entitled to the rights and remedies set forth in this Section m and to all

of the benefits of this Agreement with respect to any liability, payment, loss or cost that is incurred or made by the Surety in good faith. The foregoing obligations shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate often percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by the Surety.

[Exhibit A, p. 2, Section III].

23.   The Agreement also provides that:

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract, or Contract. If, however, any Principal or Indemnitor desires that the Surety consider adjusting, settling, prosecuting, defending, compromising, litigating, protesting, or appealing, any claim, demand, suit, award, assessment, or judgment against any Principal or the Surety, such Principal or Indemnitor shall:

A. Give written notice to the Surety to this effect by certified or registered mail; and

B. Simultaneously therewith, deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the
Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement....

[Exhibit A, p. 3, Section VIII].

8

24.     Additionally, the Agreement provides that:

In the event of any payment by the Surety, an itemized, sworn statement of the amount of any such payment, invoice(s) or other evidence of such payment shall be prima facie evidence of the fact and the amount of such payment and, in the absence of actual fraud, shall be final, conclusive and binding upon any Principal or Indemnitor in any claim, suit or other proceeding by the Surety.

[Exhibit A, p. 4, Section IX].

25.     Finally, the Agreement provides that:

If an Event of Default occurs, or if a claim is made against the Surety under any Bond, the Principals and Indemnitors shall, on demand from the Surety, immediately deposit with the Surety collateral in any amount, value or form as the Surety may designate in its sole and absolute discretion. Such collateral shall be held by the Surety as collateral security in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with the Surety or any other benefits and protections afforded to the Surety by this Agreement or any other agreement.

[Exhibit A, p. 4, Section X(A)].

26.     The Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify and keep Plaintiffs indemnified "from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest,

court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature" as a result of executing the payment and performance bonds or because of ASC's, or the Indemnitors', failure to comply with the Agreement.

27.     Plaintiffs agreed to issue payment and performance bonds naming ASC as principal at the Indemnitors' request in consideration for their promise to comply with the terms of the Agreement.

28.     Plaintiffs issued payment and performance bonds naming ASC as principal (the "Bonds") on constructions project located in Fort Rucker, AL, Radford, VA, and North Charleston, SC (the "Projects").

29.     Plaintiffs received claims against the Bonds from various entities, including several subcontractors, material suppliers, and/or rental equipment providers making payment bond claims for the labor, services, materials, or equipment they performed or furnished on the Projects at ASC's request, but for which ASC has not paid.  The individuals or entities referenced are collectively referred to herein as "Claimants."

30.     Since ASC refused or was unable to resolve the Claimants' claims, Plaintiffs were forced to hire consultants and attorneys to respond to, investigate, defend against, and resolve the various claims.

31.     Plaintiffs incurred losses as a result of issuing the Bonds, which losses include the costs to defend itself against Claimants' claims and the cost to resolve Claimants' claims.

32.     As of the date of filing this Complaint, Plaintiffs has been forced to pay or satisfy various Claimants' claims (the "Claims Paid").

33.     In addition to the Claims Paid, Plaintiffs paid attorneys' fees and consultants' fees to investigate, defend, and/or satisfy the Claimants' claims.

34.     Before filing this action, Plaintiffs demanded, orally and in writing, that the Indemnitors post collateral and indemnify it for all amounts it has incurred to satisfy the Claimants' claims, and for the attorneys' fees and costs Plaintiffs has incurred as a result of investigating and defending the Claimants' claims.

35.      Despite Plaintiffs' demand, the Indemnitors have failed and refused to comply with Plaintiffs' request for collateral and indemnification for the losses Plaintiffs suffered as a result of issuing the Bonds.

36.     The Indemnitors have not reimbursed Plaintiffs for the Claims Paid or the attorneys' fees, consultants' fees, and other costs and expenses Plaintiffs incurred as a result of issuing the Bonds.

37.     Plaintiffs retained the undersigned attorney to represent it in this action, and is obligated to pay the attorney a reasonable fee for their services rendered.

11

38.     Plaintiffs have performed all of the terms, covenants, and conditions required on their part to be performed under the terms of the Agreement or has been excused from doing so by Indemnitors.

39.     All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## <u>COUNT I</u>
**(Breach of Contract / Contractual Indemnity against the Indemnitors)**

40.     Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 39 as if fully set forth herein.

41.     Pursuant to the Agreement, the Indemnitors promised to "exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature" that Plaintiffs incur by reason of, among other things, having executed the Bonds or enforcing the Agreement.

42.     Pursuant to the Agreement, the Indemnitors also agreed to "immediately deposit with the Surety collateral in any amount, value or form as the

Surety may designate in its sole and absolute discretion" to cover Plaintiffs' liability.

43.     The Indemnitors have committed various breaches and defaults of the Agreement, including but not limited to:

a.     failing and refusing to pay the Claimants' claims;

b.     failing and refusing to collateralize Plaintiffs against future loss or liability with regard to claims made on the Bonds;

c.     failing and refusing to indemnify Plaintiffs from any and all liability for losses and expenses that Plaintiffs incurred, of whatsoever kind or nature, relating to the claims made on the Bonds;

d.     the termination of bonded subcontracts that ASC had with Fluor Federal Solutions, LLC and Roy Anderson Corp., obligees on two of the Bonds, following respective declarations of default;

e.     the Plaintiffs payment of the Claimants' claims under the Bonds; and

f.     ASC's and Mr. Spear's inaccurate representations to USSIC about the outstanding payables ASC owed on Bond No. 100437884.

44.     As a result of the Indemnitors' breaches of the Agreement, Plaintiffs suffered damages, including but not limited to the following damages, which continue to accrue, and thus Plaintiffs' damages are continuing in nature:

13

      a.     payments made to satisfy the Claimants' claims; and

      b.     attorneys' fees, consultants' fees, and other costs and expenses that Plaintiffs incurred as a result of issuing the Bonds;

45.     Plaintiffs are entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Agreement.

WHEREFORE, Plaintiffs demand judgment against the Indemnitors, jointly and severally, for damages, costs of this action, prejudgment interest, attorneys' fees and such further relief as this Court deems just and proper.

## COUNT II
### (Equitable Subrogation against ASC)

46.     Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 18, 27 through 37, and 39 as if fully set forth herein.

47.     Plaintiffs were forced to pay the Claimants after ASC and/or the Indemnitors failed and/or refused to do so.

48.     ASC was primarily liable to the Claimants under the terms of their subcontracts and the Bonds.

49.     Plaintiffs' liability to the Claimants was merely technical, secondary, and vicarious to that of ASC, which was actively and completely at fault for the underlying liability to the Claimants.

50.     ASC, as principal on the various Bonds, was required to pay the Claimants' claims.

51.     Plaintiffs, having paid to settle the various Claimants' claims, are equitably subrogated to the Claimants' rights against ASC.

52.     Plaintiffs' payments to the Claimants, and any future payments to Claimants, were a result of its obligations under the Bonds and to protect its own interests, not as a volunteer.

53.     Plaintiffs satisfied the entire amount due and owing to each claimant relating to the respective bond that Plaintiffs issued.

54.     Neither the Indemnitors nor any other third-parties' rights will be harmed by Plaintiffs' subrogation to the Claimants' rights.

55.     Plaintiffs' damages include, but are not limited to, all sums Plaintiffs has paid to settle the Claimants' claims and Plaintiffs' costs and fees incurred to pursue this action.

WHEREFORE, Plaintiffs demands judgment against ASC for damages, court costs, prejudgment interest, attorneys' fees, and such other relief as this Court deems just and proper.

## **COUNT III**
### **(Exoneration against ASC)**

56.     Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 18, 27 through 37, and 39 as if fully set forth herein.

57.     ASC has allegedly been unable and/or unwilling to satisfy its obligations on the construction Projects to which the Bonds relate by, in part, failing to pay various Claimants.

58.     Plaintiffs are not attempting to avoid their secondary liability to any of the Claimants for the reasonable value of labor, material, services and/or equipment they provided on the Projects, to the extent the Claimants demonstrated that they were owed such monies.

59.     Instead, Plaintiffs demand that ASC be compelled to fulfill its obligations to Plaintiffs by indemnifying Plaintiffs for the Claimants' claims.

60.     Under the doctrine of exoneration, Plaintiffs are entitled to have ASC exonerate it for all amounts Plaintiffs have paid and/or incurred as a result of issuing the Bonds.

WHEREFORE, Plaintiffs requests that this Court enter an Order compelling ASC to exonerate Plaintiffs by fulfilling its primary obligations to the Claimants and to place Plaintiffs in funds sufficient to reimburse it for the losses Plaintiffs has already suffered.

## COUNT IV
### (Common Law Indemnity against ASC)

16

61.   Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 18, 27 through 37, and 39 as if fully set forth herein.

62.   Plaintiffs are without fault for the Claimants' claims.

63.   Plaintiffs had a special relationship with ASC by virtue of issuing the Bonds.

64.   Plaintiffs' liability under the Bonds, if any, is merely technical, secondary, and vicarious to that of ASC, which is actively and completely at fault for, and obligated to timely pay, any underlying liability on the Bonds, including, without limitation, any liability to the Claimants.

65.   As a direct and proximate result of ASC's failure to honor its obligations, Plaintiffs incurred and continue to incur damages, losses and expenses, including attorneys' fees, consultants' fees, and costs, by reason of having executed the Bonds.

66.   ASC is liable to Plaintiffs for all losses, expenses, consultants' fees, and attorneys' fees sustained by reason of having executed the Bonds including, without limitation, all payments Plaintiffs made to satisfy the Claimants' claims and all attorneys' fees Plaintiffs incur as a result of issuing the Bonds.

67.   To date, Plaintiffs have incurred damages in the form of payments made to satisfy the Claimants' claims.  Plaintiffs has also incurred damages in the

form of attorneys' fees, consultants' fees, interest, and costs, as a result of issuing the Bonds.

68.    Plaintiffs are entitled to receive their reasonably incurred attorneys' fees pursuant to applicable Florida law.

WHEREFORE, Plaintiffs requests that this Court enter judgment against ASC for damages, attorneys' fees, prejudgment interest, costs, and such further relief as this Court deems just and proper.

Dated this 16th day of February, 2021.

/s/ Ryan J. Weeks
RYAN J. WEEKS, ESQ.
Florida Bar No. 57897
rweeks@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
Attorney for Plaintiffs
