IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

AM. CONTRACTORS
INDEM. CO., et al.,

     Plaintiffs,

v.                                   CASE NO. 1:21-cv-21-AW-GRJ

ALLAN SPEAR CONSTR.
LLC, et al.,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiffs' Motion for Default Judgment against Defendants Allan Spear Construction, LLC, A&G Equipment Rentals, LLC, Chear, LLC, Kusky & Spear, LLC, Spear Hauge, LLC, Spear Northwood, LLC, Spear Holdings, LLC, Trisal, LLC, Allan W. Spear, III, and Vivian C. Spear.  ECF No. 17.  Notwithstanding proper service of Plaintiffs' Complaint and notice of subsequent proceedings, ECF Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, Defendants have elected not to participate in this case. On May 12, 2021, the undersigned conducted a remote evidentiary hearing on Plaintiffs' motion, namely to determine an appropriate award of damages.  ECF No. 20.  The instant motion is, therefore, ripe for

consideration.  For the reasons explained below, it is respectfully

**RECOMMENDED** that Plaintiffs' motion should be **GRANTED**.

## I.  BACKGROUND

This is a breach of contract case.  Plaintiffs American Contractors

Indemnity Company, United States Surety Company, and U.S. Specialty

Insurance Company are construction surety companies that issue payment

and performance bonds for contractors.  ECF No. 1 at 6.  On May 26,

2017, Defendants executed a General Indemnity Agreement in favor of

Plaintiffs, their affiliates, and their agents, as a prerequisite for Plaintiffs to

issue payment and performance bonds.  *Id.*; *see also* ECF No. 1-1.

Defendants agreed as indemnitors to

> jointly and severally, exonerate, indemnify, reimburse, and save
> and hold [Plaintiffs] harmless from and against any and all
> demands, liabilities, losses, costs, damages, expenses and fees
> (including, but not limited to, those incurred by or in connection
> with accountants, attorneys, consultants, engineers,
> investigation, and other professionals), interest, court costs, and
> any and all other types of losses, costs or expenses of
> whatsoever kind or nature, which [Plaintiffs] may sustain or incur
> or which arise by reason of or in any manner in consequence of
> anyone or more of the following: (i) the execution or procurement
> by the [Plaintiffs] of any Bond; (ii) the failure of any Principal or
> Indemnitor to perform or comply with any provision of this
> Agreement; (iii) the enforcement of any provision of this
> Agreement; (iv) the conduct of any investigation regarding
> [Plaintiffs'] alleged obligations or liabilities under any Bond or in
> connection with any Contract; (v) any attempt by or on behalf of
> [Plaintiffs] to obtain a release or reduction of [Plaintiffs'] liability or
> alleged liability under any Bond or Contract; (vi) any attempt by or

on behalf of [Plaintiffs] to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or advance of any monies to any Principal or Indemnitor; or (ix) [Plaintiffs'] attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise.

ECF No. 1-1 at 3.  Plaintiffs maintained "the right, in [their] sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract, or Contract."  *Id.* at 4.  Lastly, Plaintiffs and Defendants agreed to the following terms of reimbursement:

The Principals and Indemnitors further agree that they shall be liable for, and that [Plaintiffs] shall be entitled to charge and recover for, any and all payments made by [Plaintiffs] in the good faith belief that: (1) any Principal or Indemnitor is or has been in default under this Agreement; (2) [Plaintiffs] w[ere] or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of [Plaintiffs'] rights or interests or to avoid or lessen [Plaintiffs'] actual or alleged liability.  [Plaintiffs] shall be entitled to the rights and remedies set forth in this Section m and to all of the benefits of this Agreement with respect to any liability, payment, loss or cost that is incurred or made by [Plaintiffs] in good faith.  The foregoing obligations shall extend to and include an obligation to pay to [Plaintiffs] interest on any payments made by [Plaintiffs] as a result of having issued any Bond, at the rate often percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by [Plaintiffs].

*Id.* at 3.

Plaintiffs issued payment and performance bonds for Defendants on construction projects located in North Charleston (South Carolina), Radford (Virginia), and Fort Rucker (Alabama).  ECF No. 1 at 10.  The first contract was for the Visiting Quarters & Companion Project in North Charleston. ECF No. 17-1 at 5.  Under the General Indemnity Agreement, Plaintiffs issued payment and performance bonds, Bond No. 100437884, for the Visiting Quarters project that named Allan Spear Construction as the principal and Roy Anderson Corp. as obligee.  *Id*.  The second contract was for the Nitrocellulose Plant at the Radford Army Ammunition Plant.  *Id.* Plaintiffs issued payment and performance bonds, Bond No. 100387970, for the Nitrocellulose Plant that named Allan Spear Construction as the principal and Fluor Federal Solutions as obligee.  *Id.*  And the third contract was for an elementary school in Fort Rucker.  *Id.*  Plaintiffs issued payment and performance bonds, Bond No. 100377929, that named Allan Spear Construction as the principal and Carothers Construction as obligee.  *Id.*

Eventually, there were several claims against the payment and performance bonds for these projects.  ECF No. 1 at 10; ECF No. 17-1 at 5.  As Plaintiffs put it, they "received claims against the [b]onds from various entities, including several subcontractors, material suppliers, and/or

4

rental equipment providers making payment bond claims for the labor, services, materials, or equipment they performed or furnished on the Projects at [Allan Spear Construction's] request, but for which [Allan Spear Construction] has not paid."  ECF No. 1 at 10.

Plaintiffs say they were "forced to hire consultants and attorneys to respond to, investigate, defend against, and resolve the various claim," and, in so doing, incurred significant losses.  *Id.* at 10–11.  Before filing the instant action, Plaintiffs demanded Defendants indemnify them for all amounts and losses it incurred.  *Id.* at 11.  Defendants failed to respond or refused, and Plaintiffs have since incurred attorney's fees, costs, and other expenses.  *Id.* at 11–12.

Plaintiffs filed their Complaint on February 16, 2021.  ECF No. 1. Defendants were served with the Complaint, ECF Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, but they did not enter an appearance or otherwise timely respond.  The Clerk, consequently, entered a default against Defendants at Plaintiffs' request.  ECF No. 16.

Plaintiffs move now for default judgment on Count One of the Complaint (a breach of contact claim).  ECF No. 17.  Plaintiffs request the Court enter judgment finding Defendants jointly and severally liable and awarding them the principal amount of their losses plus prejudgment and

post-judgment interest, as well as the attorney's fees incurred by Plaintiffs in this action. *Id.* at 15. In support of their motion, Plaintiffs filed an affidavit executed by Patrick Laverty, the Vice President of Bond Claims for American Contractors Indemnity Company and Assistant Vice President of Bond Claims for United States Surety Company and U.S. Specialty Insurance Company. ECF No. 17-1. The affidavit explains the execution and terms of the parties' General Indemnity Agreement, the issuance of the payment and performance bonds for Plaintiffs' constructions projects, the claims against those bonds, and Plaintiffs' total losses (including payment on claims made, consultation fees and costs, and attorneys' fees). *Id.*

The undersigned held a remote evidentiary hearing on May 12, 2021, using videoconferencing technology. ECF No. 20. Plaintiffs' counsel appeared and presented the live testimony of Mr. Laverty. Plaintiffs also offered, and the Court admitted, exhibits in support of their proposed calculation of damages. ECF No. 19. Defendants did not appear at the hearing, nor did they notify the Court of an intent to participate or to object to the entry of default judgment.

## II. LEGAL STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a party who has failed to plead in response to a

6

complaint.  Fed. R. Civ. P. 55(b).  "Entry of default judgment is only

warranted when there 'is a sufficient basis in the pleadings for the judgment

entered.'"  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th

Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d

1200, 1206 (5th Cir. 1975)[1]).

The question of whether there is a "sufficient basis" for the entry of

default judgment is a legal standard the Eleventh Circuit has described as

"akin to that necessary to survive a motion to dismiss for failure to state a

claim."  *Id.*  Accordingly, a plaintiff must assert "sufficient factual matter"

that, if accepted as true, "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is

met only where the facts alleged enable the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Franklin

v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013).  Mere labels and

conclusions are insufficient.  *Iqbal*, 556 U.S. 662 at 678.

Although a defaulted defendant is deemed to have admitted well-

pleaded allegations of fact as to liability, the Court must determine the

"amount and character of damages to be awarded."  *Miller v. Paradise of*

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

*Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999); *see also*
*Ensley v. Gene's Wrecker Service, Inc.*, No. 3:16-cv-713-MCR-CJK, 2019
WL 339630, at *1 (N.D. Fla. Jan. 27, 2019) ("[E]ven in the context of a
default judgment, a court has an obligation to assure that there is a
legitimate basis for any damage award it enters.").  The plaintiff has the
burden of proving entitlement to and the amount of damages.  *Wallace v.*
*The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).

The Court may take into account affidavits and such other evidence
as it deems necessary.  Fed R. Civ. P. 55(a).  Further, "The [C]ourt may
conduct hearings or make referrals … when to enter or effectuate
judgment, it needs to: (A) conduct an accounting; (B) determine the amount
of damages; (C) establish the truth of any allegation by evidence; or (D)
investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

### III.  DISCUSSION

#### A.    Suretyship and Indemnity Damages

The Florida Supreme Court has described a suretyship, such as the
one here, as

> a contractual tripartite relationship in which one party (the surety)
> guarantees to another party (the obligee) that a third party (the
> principal) will perform a contract in accordance with its terms and
> conditions.  The surety promises the obligee to answer the debt,
> default, or miscarriage of the principal.  Suretyship is a form of
> guaranty.   In exchange  for  a  premium,  the  surety  lends  its

8

> financial strength and credit to the principal on the condition that,
> if the surety has to satisfy the principal's debt or default, the
> principal will indemnify the surety for its losses and expenses. In
> essence, the surety becomes the guarantor of the principal's
> ability to perform its obligations to the obligee. Given this
> description, it is reasonable to conclude that an owner/obligee,
> by requiring that a bond be obtained by the principal, is
> essentially insuring itself from potential losses that would result
> in the event the principal defaults on its obligations required by
> the underlying construction contract.

*Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 945 So. 2d 1216,

1226 (Fla. 2006). Sureties hold a "vital role … in the construction industry."

*Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d

1290, 1303 (S.D. Fla. 2008). Accordingly, a surety enjoys "broad discretion

to settle a claim[,] and the only defense to indemnity for the settlement is

bad faith on the part of the surety." *Travelers Cas. and Sur. Co. of Am. v.

Grace & Naeem Uddin, Inc.*, No. 08-61868-CIV, 2009 WL 4110110, at *2

(S.D. Fla. Nov. 24, 2009).

Florida law provides that "[a] surety is entitled to reimbursement

pursuant to an indemnity contract for any payments made by it in a good

faith belief that it was required to pay, regardless of whether any liability

actually existed." *Thurston v. Int'l Fidelity Ins. Co.*, 528 So. 2d 128, 129

(Fla. 3d DCA 1988) (citing *Waterhouse v. McDevitt Street Co.*, 387 So. 2d

470 (Fla. 5th DCA 1980)); *see also Liberty Mut. Ins. Co.*, 534 F. Supp. 2d

at 1303–04 ("Sureties draft their indemnity agreements broadly, and with

9

extensive protections, and the courts, understanding the importance of the indemnity agreement, consistently enforce the agreements and the remedies granted to the sureties.").

Additionally, the indemnification of attorney's fees—incurred in defending claims on the bonds or in litigation of the indemnity agreement— is subject only to a reasonableness requirement.  *See Travelers Cas. and Sur. Co. of Am.*, 2009 WL 4110110, at *2 ("[C]ourts have found that, even where it is not expressly stated, the concept of 'reasonableness' must be applied to any claim for indemnification of attorney fees."); *Sork v. United Benefit Fire. Ins. Co.*, 161 So. 2d 54, 56 (Fla. 3d DCA 1964) (remanding case to the trial court for "a jury to resolve what constitutes a reasonable attorney's fee both in defense of the original action on the performance bond and for prosecuting the instant action on the indemnity agreement").

### B.    Plaintiffs' Breach of Contract Claim

Count One of the Complaint alleges a breach of the General Indemnity Agreement.  To state a claim for breach of contract in Florida, the plaintiff must plead: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

Here, Plaintiffs satisfy all three elements.  First, there is a valid contract between Plaintiffs and Defendants (the General Indemnity Agreement).  ECF No. 1 at 6; ECF No. 1-1.  Second, Plaintiffs plausibly allege a material breach of the General Indemnity Agreement.  That is, Defendants agreed to indemnify Plaintiffs for losses as a result of execution of the payment and performance bonds but have failed to do so notwithstanding notice of Plaintiffs' losses.  ECF No. 1 at 11–14.  And third, as explained below, Plaintiffs allege that they incurred damages resulting from Defendants' breach, namely the costs of resolving claims against the payment and performance bonds.  *Id.* at 10–11.  There is, therefore, a "sufficient basis" to enter default judgment on Defendants' breach of contract claim.

## C.    Calculation of Damages

Plaintiffs presented a wealth of evidence in support of their request for an award of damages.[2]  For starters, they submitted as an exhibit loss and recovery transaction reports for Bond No. 100437884 (the Visiting Quarters project) and Bond No. 100387970 (the Nitrocellulose Plant).  ECF

---

[2] By way of background, there are three categories of losses in construction indemnity cases that are relevant here: (1) direct losses for claims under payment and performance bonds; (2) loss adjustment expenses, which are fees and costs for attorneys, constructions consultants, and investigations to handle claims against the bonds; and (3) subrogation expenses, which are fees and costs incurred to pursue and recover losses under the indemnity agreement.

No. 19-3.  These reports itemize the losses incurred under both the

payment and performance bonds, fees and costs incurred through outside

vendors (attorneys and consultants), any recoveries to offset losses, and

subrogation expenses.

Between August 27, 2019, and March 12, 2021, Defendants paid: (1)

$678,718.34 on claims against the payment bond for the Visiting Quarters

project, ECF No. 19-4; (2) $16,489.50 to the law firm tasked with

investigating and resolving those claims and claims against the payment

bond on the Nitrocellulose Plant (Manier & Herod), ECF No. 19-6 at 2–11;

(3) $13,799.16 to a construction consultant on payment and performance

bond claims (Forcon International Corp.), ECF No. 19-5; and (4) $750.00 to

Chicago Title Company, ECF No. 19-6 at 12.  Mr. Laverty testified at the

evidentiary hearing that Plaintiffs have recovered only $5,000.00 to offset

the proposed losses.

The Court concludes first that Plaintiffs are entitled to an award for

their net losses for claims made against the payment bond for the Visiting

Quarters project.  Plaintiffs believed they were liable to pay the claims

asserted and that such payments were necessary to protect its rights under

the indemnity agreement.  These claims were investigated and resolved in

good faith, and neither Florida law nor the General Indemnity Agreement

12

require Plaintiffs to prove that any actual liability to the claimants existed. The total amount of $673,718.34 is the difference between the claims paid by Plaintiffs and their recent recovery of $5,000.00.

Plaintiffs are also entitled to recover the attorneys' and consultants' fees and costs described above because Defendants agreed to indemnify Plaintiffs for these exact losses. ECF No. 1-1 at 3. As to attorneys' fees, the only remaining question is whether the fees were reasonably incurred.

The Court "is itself an expert on the question [of determining attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees." *Norman v. Hous. Auth. of Montgomery*, 826 F.2d 1292, 1303 (11th Cir. 1988). And Plaintiffs submitted an affidavit of reasonable attorneys' fees from attorney Daniel H. Puryear, who has been a member of the Tennessee Bar for 25 years and has significant experience in suretyship matters such as this one. ECF No. 19-1; *see also Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1363 (S.D. Fla. 2010) ("Typically, a fee applicant provides an expert affidavit to support the reasonableness of the hourly rates sought.").

Having reviewed the proposed hourly rates and total hours of work performed by counsel at Manier & Herod,[3] the Court concludes they are reasonable. Indeed, it is significant that Plaintiffs have already paid its prelitigation counsel for the amount of work at the requested rates. ECF No. 19-6 at 2–11; *see also Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 713–14 (11th Cir. 2014) ("What an attorney charges his clients is 'powerful, and perhaps best, evidence of his market rate.'" (quoting *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000))).

In sum, Plaintiffs are due to be awarded $704,757.00 in damages. Additionally, Plaintiffs are entitled to prejudgment interest (as calculated in ECF No. 19-7 and accruing until the date default judgment is entered) *and* post-judgment interest (as provided in the federal interest statute, 28 U.S.C. § 1961,[4] and accruing from the date default judgment is entered).

---

[3] To investigate and resolve the claims against the payment and performance bonds on three construction projects, attorney Jeffrey S. Price expended 46.1 hours at an hourly rate of $245, attorney Melissa Jane Lee expended 19 hours at an hourly rate of $245.00, and attorney Jacob E. Bolton expended 2.6 hours at an hourly rate of $200.00.

[4] The post-judgment interest rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

Lastly, at Plaintiffs' request, the undersigned reserves on determining entitlement to and the amount of an award of attorneys' fees incurred by Plaintiffs in the prosecution of this action.[5]

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Plaintiffs' Motion for Default Judgment, ECF No. 17, should be **GRANTED**.  The Court should **DIRECT** the Clerk to enter a final default judgment against Defendants Allan Spear Construction, LLC, A&G Equipment Rentals, LLC, Chear, LLC, Kusky & Spear, LLC, Spear Hauge, LLC, Spear Northwood, LLC, Spear Holdings, LLC, Trisal, LLC, Allan W. Spear, III, and Vivian C. Spear finding them jointly and severally liable to Plaintiffs American Contractors Indemnity Company, United States Surety Company, and U.S. Specialty Insurance Company for $704,757.00 in damages, plus prejudgment interest (as calculated in ECF No. 19-7 and accruing until the date default judgment is entered) and post-judgment interest (as provided in the federal interest statute, 28 U.S.C. § 1961, and accruing from the date

---

[5] Plaintiffs must notify the Court **by no later than May 28, 2021**, whether they intend to seek an additional award of attorneys' fees against Defendants for the prosecution of this action.

15

default judgment is entered).[6]

　　　　　**IN CHAMBERS** this 14th day of May 2021.

　　　　　　　　　　　　　*s/Gary R. Jones*

　　　　　　　　　　　　　GARY R. JONES
　　　　　　　　　　　　　United States Magistrate Judge


## NOTICE TO THE PARTIES

　　　　　**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

---

[6] The **Clerk** is directed to serve by U.S. Mail a copy of this report and recommendation on each Defendant.